**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff )<br>)<br>v. )<br>)<br>RAFAEL POLANCO, JR., )<br>)<br>Defendant. )<br>_____ ) | No. 13 C 6098<br><br>Judge Rebecca R. Pallmeyer |
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MARGARITA GONZALEZ, )<br>)<br>Defendant. )<br>_____ ) | No. 13 C 7018<br><br>Judge Rebecca R. Pallmeyer |
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MARGARITA GONZALEZ )<br>)<br>Defendant. )<br>_____ ) | No. 16 C 6499<br><br>Judge Rebecca R. Pallmeyer |

## MEMORANDUM OPINION AND ORDER

Rafael Polanco and Margarita Gonzalez pleaded guilty to arson. Together with a third person, Jennifer Trinidad, Gonzalez set a fire in a hallway outside of the apartment of a woman with whom Gonzalez was feuding; Polanco helped by buying gasoline to be used as an accelerant, waiting outside the apartment building, driving a getaway car, and disposing of evidence. The Defendants waited until late at night, when the lights in the apartment building

were out, to set the fire.   In doing so, they endangered all residents of the building and grievously injured the intended victim and her two small children.   Following their guilty pleas, this court imposed above-guideline sentences, which were upheld on direct appeal.   Both have filed motions to vacate their sentences under 28 U.S.C. § 2255; Gonzalez has also filed a request for leave to file a successive motion, and Polanco has asked for discovery.   For the reasons stated below, all of these motions are denied.

## **BACKGROUND**

### I.   **Defendants' Offense and Convictions**

The facts of this case are set forth in detail in the Seventh Circuit's order affirming these sentences on direct appeal, *United States v. Polanco*, 496 F. App'x 639 (7th Cir. 2012); the court recounts them briefly.   Gonzalez and Polanco, who were living together as a couple, were involved in a tangle of romantic disputes with each other and with two other people, Janelle Fermaintt and Erick Brito.   *Id.* at 640.   Fermaintt and Gonzalez in particular had intense animosity toward one another:   Fermaintt had threatened to set fire to Gonzalez's car, which was indeed burned.   *Id.*   A friend of Fermaintt received an untraceable text message stating something along the lines of "tell your friend that we are going to get her but she is always with her kids."   (Margarita Gonzalez Presentence Investigation Report at 4, *United States v. Gonzalez*, No. 09-CR-637 (N.D. Ill. Oct. 20, 2010) (filed under seal) [95] ("Gonzalez PSR").)

On the night of November 6, 2008, Polanco and Gonzalez drove to a gas station and filled an empty laundry detergent bottle with gasoline, which Polanco paid for.   (*Id.* at 5); *Polanco*, 496 F. App'x at 641–42.   They picked up a friend, Jennifer Trinidad, and drove to Fermaintt's apartment building.   *Id.* at 641.   Using antifreeze, rather than the gasoline, as an accelerant, they set Fermaintt's car on fire.   *Id.* at 641.   As the car burned, Polanco remarked that the car fire would leave Fermaintt better off than she was before the fire, once she collected insurance money.   (Polanco Am. Plea Decl. at 4, *United States v. Gonzalez*, No. 09-CR-637 (N.D. Ill. Aug. 12, 2010) [71].)   Gonzalez, Polanco, and Trinidad watched as firefighters arrived

and extinguished the fire, but after the firefighters left and the lights in the apartment building had gone out, Gonzalez announced that she was "not done yet." *Polanco*, 496 F. App'x at 641. She and Trinidad took the gasoline into the apartment building while Polanco waited outside. *Id.* Gonzalez poured the gasoline in the hallway and on Fermaintt's apartment door. *Id.* Trinidad warned that Fermaintt's children might be in the apartment, but Gonzalez reportedly responded, "I don't care." *Id.*

With the gasoline surrounding the door, either Gonzalez or Trinidad (each points the finger at the other) lit a match. (Gonzalez Change of Plea Tr. at 22:6–12, *United States v. Gonzalez*, No. 09-CR-637 (N.D. Ill. June 4, 2010) [122]; *see* Sentencing Tr. at 218:20–219:12, *United States v. Gonzalez*, No. 09-CR-637 (N.D. Ill. Sept. 2, 2010) [124].) The two women then left the building, and Polanco drove them away, stopping at some point to dispose of the laundry detergent bottle and Gonzalez's sweatshirt. (Polanco Am. Plea Decl. at 4.)

Fermaintt and her two daughters, ages six and three, were unable to escape the apartment via the door. *Polanco*, 496 F. App'x at 641. Fermaintt dropped her older daughter from a window, where neighbors caught her in a plastic swimming pool. *Id.* Firefighters eventually rescued Fermaintt and her younger daughter. *Id.* Both children are now severely scarred; each has lost use of a limb; they cannot be exposed to sunlight; and both must wear special compression garments. *Id.*

During the investigation, Gonzalez attempted to manufacture an alibi: she asked the father of one of her children, Dominick Correa, and her sister to say she had been with them at the time of the fire. *Id.* Instead, however, Correa began cooperating with investigators, as did Trinidad, who "minimized her own involvement by explaining that she had been too afraid of Gonzalez to stop her or to leave." *Id.* Gonzalez and Polanco threatened Correa's pregnant girlfriend after they suspected him of cooperating. *Id.* Polanco eventually testified before a grand jury, claiming that Gonzalez had set the fire, but that he did not know what she planned. *Id.* at 641–42.

Both Polanco and Gonzalez were charged with arson affecting interstate commerce, *see* 18 U.S.C. § 844(i), and Gonzalez was also charged with obstruction of justice, *see* 18 U.S.C. § 1503(a). On June 3, 2010, Polanco pleaded guilty; in his plea declaration, he elaborated that when they encountered Fermaintt's car, Gonzalez "produced" the detergent bottle and set Fermaintt's car on fire, suggesting that Gonzalez was the one who brought gasoline to the scene and that he was unaware she had gasoline. (Polanco Plea Decl. at 3, *United States v. Gonzalez*, No. 09-CR-637 (N.D. Ill. June 2, 2010) [61].) Polanco admitted that he had reason to suspect that Gonzalez intended to set fire to the apartment, and that Trinidad's and Gonzalez's conduct gave him reason to believe that they were starting a fire. (*Id.* at 4; Polanco Change of Plea Tr. at 21:24–22:6, *United States v. Gonzalez*, No. 09-CR-637 (N.D. Ill. June 3, 2010) [123].) He also acknowledged that Gonzalez and Trinidad disposed of the detergent bottle and Gonzalez's sweatshirt. (Polanco Plea Decl. at 4.) At his change of plea hearing, Polanco affirmed that he was not forced or threatened to plead guilty. (Polanco Change of Plea Tr. at 13:1–5.)

Gonzalez also pleaded guilty. She maintained that Trinidad was the one who actually lit the fire, but acknowledged that, even so, Gonzalez herself was also guilty of arson. (Gonzalez Change of Plea Tr. at 22:6–23.)

Two months later, Gonzalez obtained copies of Polanco's credit card statements, which showed that Polanco, not Gonzalez, had purchased the gasoline that night, contrary to the assertion in Polanco's plea declaration that Gonzalez had "produced" the gasoline bottle at the scene.[1] (*See* Sentencing Tr. at 257:8–12, 258:22–25, *United States v. Gonzalez*, No. 09-CR-637 (N.D. Ill. Sept. 3, 2010) [125]; Polanco's Mot. to Continue Sentencing and Leave to File Am. Change of Plea Decl., *United States v. Gonzalez*, No. 09-CR-637 (N.D. Ill. Aug. 5, 2010) [67].)

---

[1] Presumably, Gonzalez obtained these records so that the gasoline purchase would not be attributed to her (as Polanco had stated in his initial plea declaration), in the belief that this would make a difference in her sentence.

Polanco and his lawyer became aware of this evidence, though it is unclear precisely how it came to their attention. Acknowledging that "certain evidence ha[d] come to light[,]" (Polanco's Mot. to Continue Sentencing and Leave to File Am. Change of Plea Decl.), Polanco submitted an amended plea declaration, acknowledging that he and Gonzalez purchased the gasoline and that he was the one who filled the detergent bottle; he admitted, as well, that he walked with Gonzalez to the car, where Gonzalez lit the car on fire. (Polanco Am. Plea Decl. at 3.) Polanco also admitted that he, not Gonzalez, disposed of the sweatshirts and the detergent bottle. (*Id.* at 4.) At the amended change of plea hearing, Polanco affirmed that the amended plea declaration was true. (Polanco Am. Change of Plea. Tr. at 11:19–12:1, *United States v. Gonzalez*, No. 09-CR-637 (N.D. Ill. Aug. 12, 2010) [116].) In response to questions asked by the prosecutor, Polanco also admitted that when he filled the detergent bottle with gas, he knew that Gonzalez intended to burn the apartment building as well as the car. (*Id.* at 13:4–23.)

## II.  Presentence Investigation Reports

When an arsonist attempts to kill, the U.S. Sentencing Guidelines dictate that a court should apply the attempted-murder guidelines. *Polanco*, 496 F. App'x at 642; U.S Sentencing Guidelines Manual § 2K1.4(c) (U.S. Sentencing Comm'n 2016). The probation officer who prepared the presentence investigation reports did not believe that the defendants intended to kill Fermaintt, but noted they did intent to harm her and that "it [wa]s highly likely . . . that some type of injury would result." (Rafael Polanco Presentence Investigation Report at 13, *United States v. Gonzalez*, No. 09-CR-637 (N.D. Ill. Oct. 20, 2010) (filed under seal) [99] ("Polanco PSR").); *see* Gonzalez PSR 13–14.) The officer therefore applied the arson base offense level of 24 (because the defendants knowingly created a substantial risk of death or serious bodily harm). (Polanco PSR 12; Gonzalez PSR 15); U.S. Sentencing Guidelines § 2K1.4(a). The probation officer recommended a two-level enhancement because there were vulnerable victims (Polanco PSR 14–16; Gonzalez PSR 15–17), and a two-level obstruction of justice enhancement for both Defendants. (Polanco PSR 17–18; Gonzalez PSR 20–21.) The officer

opined that neither of the Defendants had earned an adjustment for acceptance of responsibility; Polanco did not come clean about his role in the offense until confronted with evidence, and Gonzalez asked others to lie on her behalf and minimized her own involvement. (Polanco PSR 19–20; Gonzalez PSR 24–26.)  The officer also recommended a two-level enhancement for Gonzalez as an organizer or leader.  (Gonzalez PSR 17–20.)

Part of Polanco's motion alleges that the court did not adequately consider Polanco's background, which was described in the PSR.  His mother related that he had never had any behavioral problems or engaged in criminal or gang activity, and she described Polanco's good relationship with his daughter, who was greatly distressed by her father's imprisonment. (Polanco PSR 22–23.).  She believed that Gonzalez coerced Polanco to take part in the offense.  (*Id.*)  Both Polanco and his mother commented on his learning disabilities, which the officer verified through his school records.  (*Id.* at 25.)

The probation officer recommended an upward departure from the guidelines based on the victims' physical injury, the property damage, and uncharged conduct.  (Polanco PSR 34; Gonzalez PSR 42); *see* U.S. Sentencing Guidelines §§ 5K2.2, 5K2.5, 5K2.21.  The officer recommended a 151-month sentence for Polanco, and for Gonzalez, 188 months on the arson charge and 120 months on the obstruction of justice charge, to run concurrently.  (Polanco PSR 34; Gonzalez PSR 42.)

### III.    Sentencing

At the joint sentencing hearing, the court heard from witnesses, victims, and medical experts.  Dr. Richard Gamelli, the victims' treating doctor, who directs the burn center at Loyola University Health System, testified that Tremaintt and her children sustained significant life-threatening injuries and permanent scarring.[2]  (Sentencing Tr. at 29:5–18, 89:12–17, 95:1–4.)

---

[2]    The PSRs make reference to a statement by a Dr. Brones, who apparently opined that the injuries will likely continue to improve if the children wear pressure garments, attend occupational therapy, and undergo plastic surgery; if they do, Dr. Brones apparently

Consistent with the probation officer's recommendation, the court declined to apply the attempted-murder cross reference. *Polanco*, 496 F. App'x at 643; (Sentencing Tr. 215:15, 217:10–12.) The court also applied the vulnerable-victims and the obstruction-of-justice enhancements for both defendants, and the leader/organizer enhancement for Gonzalez. (Sentencing Tr. 233:14–234:4, 234:18–24.)

The court heard lengthy argument about whether either Defendant was entitled to a sentence reduction for acceptance of responsibility. Gonzalez's counsel argued that she had accepted responsibility by pleading guilty without a plea agreement, when confronted with images of the children's burns, and because she had sought psychological help since being detained. (*See, e.g.*, *id.* at 247:15–248:25, 249:10–250:13, 250:24–251:23.) The government objected to the reduction, noting that Gonzalez had repeatedly urged others to lie, and she continued to minimize her own role in the fire. (*See id.* at 237:21–241:10, 245:2–246:25.)

As for Polanco, the government pointed out that Polanco had assisted Gonzalez in threatening cooperating witnesses' families even after he had seen photographs of the children's burns. (*Id.* at 257:19–23.) Indeed, when initially offered the opportunity to cooperate, Polanco had refused; later, after he did begin cooperating, he minimized his role in the offense. (*Id.* at 258:6–21.) Polanco's counsel argued that Polanco should nevertheless be credited with acceptance of responsibility because he came clean to the court: when Polanco amended his plea declaration, he not only changed his story about the evidence he was confronted with—the fact that he bought the gasoline—but also admitted his full role in the offense. (*Id.* at 259:14–19.) Counsel argued that, although Polanco's acceptance may have come late, it was wholehearted. (*See id.* at 259:20–261:20.)

---

believes that the injuries did not cause "permanent or life-threatening injuries." (Polanco PSR 7.) The court does not have a copy of this report, nor does it know the basis for its conclusions or Dr. Brones's background; he did not testify at sentencing.

Polanco's attorney argued, further, that Polanco was less culpable than Gonzalez, and followed her lead out of ignorance:

> I just want to say that even though this crime is perhaps one of the most heinous crimes I certainly have ever seen in this district, my client, Mr. Polanco, is not the most heinous criminal that I have ever seen in this building. In fact, Mr. Polanco is perhaps one of the most confused, dumbest criminals I have ever seen in this building.
> But for reasons that will become apparent, I believe that he is much less culpable than Margarita Gonzalez.
> . . . .
> [Polanco] was the dummy that was following around a woman whom he absolutely adored but who had absolutely no regard for him.

(*Id.* at 290:24–291:17.) Counsel also suggested that Polanco "groveled at [Gonzalez's] feet" because he had no other support system in his life, pointing to the fact that Polanco's family did not testify at the sentencing hearing; counsel suggested that fragmented family ties rendered Polanco more vulnerable to Gonzalez's manipulations. (*See id.* at 292:17–294:4.)

The court refused to credit either Defendant with acceptance of responsibility, pointing to the high bar for such a credit where the offender has obstructed justice. (*Id.* at 301:1–14.) As a result, Gonzalez's adjusted base offense level was 30 (with a criminal history category of I, her guideline imprisonment range was 97 to 121 months), and Polanco's was 28 (his criminal history category was I, as well, resulting in a guideline imprisonment range of 78 to 97 months). (*Id.* at 264:3–9); U.S. Sentencing Guidelines Table. The court also found that departures from the guidelines were appropriate based on physical injury, extreme psychological injury, extreme conduct, and uncharged conduct for the car fire. (Sentencing Tr. 215:15–217:7, 303:6–304:22); *see* U.S. Sentencing Guidelines §§ 5K2.2, 5K2.3, 5K2.8, 5K2.21. The court sentenced Gonzalez to 300 months and Polanco to 210 months. (Sentencing Tr. 304:19–305:5.) Gonzalez was sentenced to 120 months on the obstruction of justice charge, to run concurrently with her 300-month sentence for arson. (*Id.* at 305:11–13.)

**IV.     Direct Appeal**

Both Defendants appealed their sentences.  First, they argued that the court did not adequately discuss 18 U.S.C. § 3553(a) and improperly used departures to add to the guideline calculations.  *Polanco*, 496 F. App'x at 644.  But the Court of Appeals found that the court had calculated the appropriate guideline offense levels (of 30 for Gonzalez and 28 for Polanco), and then sentenced them above the guideline ranges for reasons "consistent with § 3553(a)[.]"  *Id.* Second, the Seventh Circuit also found that the court did not err by declining to address explicitly the fact that Gonzalez had been raped as a young girl or that she had committed the crime while under the influence of marijuana.  Similarly, the court found no error in the court's failure to explicitly mention Polanco's employment, the fact that he paid child support payments, and his learning disability.  Though these issues were addressed in the PSRs, defense counsel did not specifically address them at sentencing.  *Id.* at 645.

Notably, the Court of Appeals was unsympathetic to Defendants' challenges to the length of the sentences this court imposed.  In response to the contention that the sentences were unreasonably high, the Court of Appeals observed that this court's "only mistake was one that benefitted the defendants . . . ."  *Id.*  The Seventh Circuit concluded that this court should have applied the attempted-murder cross reference: "we agree with the government that the defendants' intent to kill could be inferred from their actions[.]"  *Id.*  Consequently, the Seventh Circuit found that both Defendants' sentences "cannot be called unreasonably high when their sentences could legitimately have been so much higher."  *Id.*

<u>DISCUSSION</u>

Section 2255 offers "an extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process."  *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir.2007).  Such a motion should be granted "only when the 'sentence was imposed in violation of the Constitution or laws of the United States,' the court lacked jurisdiction, the sentence was greater than the maximum

authorized by law, or it is otherwise subject to collateral attack." *Torzala v. United States*, 545 F.3d 517, 521 (7th Cir. 2008) (quoting 28 U.S.C. § 2255). A movant is not entitled to a hearing, where the record "conclusively show[s] that the prisoner is entitled to no relief[.]" 28 U.S.C. § 2255. For a claim of ineffective assistance of counsel, "if the record contains sufficient facts to explain counsel's actions as 'tactical,' generally no hearing is required." *Spiller v. United States*, 855 F.3d 751, 754 (7th Cir. 2017) (internal citation omitted).

I.      **Polanco's § 2255 Motion**

Polanco's motion alleges that he was denied effective assistance of counsel at his amended change of plea hearing, because his attorney coerced Polanco "to stipulate to a false factual basis[;]" and at sentencing, because his attorney (1) "failed to investigate or present any mitigation information," (2) "fail[ed] to argue that Polanco was less culpable than [Gonzalez]," and (3) failed to "present[] a skilled argument that the Extreme Conduct enhancement (U.S.S.G. § 5K2.8), should not have been applied equally to both Polanco and his co-defendant, who was found to be the leader/organizer." (Petition for Relief Pursuant to 28 U.S.C. § 2255 at 2, *United States v. Polanco*, No. 13-CV-6098 (N.D. Ill. Aug. 26, 2013) [1] ("Polanco § 2255 Mot.").)

An attorney provides ineffective assistance when (1) his performance "fell below an objective standard of reasonableness" and was "outside the wide range of professionally competent assistance," and (2) such deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 688, 690, 692 (1984); *see Spiller*, 855 F.3d at 755. The burden to establish deficient performance is high, and a strategic decision is not deficient unless it "amount[s] to incompetence under prevailing professional norms." *Koons v. United States*, 639 F.3d 348, 351 (7th Cir. 2011) (internal citation and quotation marks omitted). To establish prejudice, petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Spiller*, 855 F.3d at 755.

## A. Allegations Regarding Ineffective Assistance at Change of Plea Hearing

With regard to the change of plea hearing, Polanco alleges that his attorney coerced him to lie; specifically, Polanco now claims that he did not know Gonzalez would use the gasoline that he purchased to burn the apartment. (Polanco Decl. in Supp. at 3–4, *United States v. Polanco*, No. 13-CV-6098 (N.D. Ill. Nov. 8, 2013) [12] ("Polanco Decl.").) He claims that his attorney coerced him to agree to everything that the government said, so he lied, falsely acknowledging that he knew what Gonzalez intended to do. He recounts the beginning of this alleged coercion, before his first guilty plea:

> One day I didn't have court and I was in the MCC building when he came to talk. He asked me if I believed in God, and I said yes, he said, well right he can't even help you. I'm the only one who can help you. So right now, I am your God. He said now you've got help yourself by telling me everything that happened. So I did tell him everything that happen but I never told him that I bought the gas. I didn't tell him because I didn't understand the importance of it at the that time[.]
> . . . .
> I asked him what I should do. He said that I should talk to the prosecutor, and said that if I did, I would get three levels off my sentence for acceptance of responsibility.

(*Id.* at 5–6.) Polanco then recounts how he then pleaded guilty, and his attorney later confronted him with the evidence that he bought the gasoline:

> He told me that if I didn't tell him the truth he wouldn't be lawyer anymore[.] . . . He said, ok now we've got to withdraw everything you've said, and you've got to fix everything thats wrong. He said thats the only I could get the acceptance of responsibility reduction, and that thats the only way he will continue to be my lawyer.

(*Id.* at 7.) Polanco claims that, because of this alleged coercion, when the prosecutor asked him, during the second plea colloquy, if he knew that Gonzalez meant to burn the apartment, he answered affirmatively to please his lawyer: "I thought I had to in order to keep him as my lawyer, and receive the acceptance of responsibility reduction. I was fearful of this man who told me that he had more power than God and that he was my God." (*Id.* at 7–8.)

Polanco does not seek to withdraw his guilty plea; he admits that is "not challenging his guilt per se" (Polanco Reply to Government's Answer at 4, *United States v. Polanco*, No. 13-CV-

6098 (N.D. Ill. Jan. 14, 2014) [16] ("Polanco Reply")), but challenges the truth of some of statements he made during his second plea colloquy, and argues that his false statement—that Polanco bought the gas knowing that Gonzalez would use it to burn the apartment—was used against him at sentencing.

A petition seeking relief from the result of the petitioner's own sworn testimony rests on shaky ground. Sworn statements in court will not be disregarded in favor of later unsworn statements absent a compelling reason. *See United States v. Peterson*, 414 F.3d 825, 827 (7th Cir. 2005) (affirming denial of motion to withdraw guilty plea because "[j]udges need not let litigants contradict themselves so readily; a motion that can succeed only if the defendant committed perjury at the plea proceedings may be rejected out of hand unless the defendant has a compelling explanation for the contradiction."); *United States v. Stewart*, 198 F.3d 984, 987 (7th Cir. 1999) (affirming denial of motion to withdraw guilty plea because "[a] defendant's protestation that statements freely made under oath when entering the plea were a pack of lies is not a 'fair and just reason' to start anew."); *United States v. Martinez*, 169 F.3d 1049, 1054 (7th Cir. 1999) (affirming denial of motion to withdraw guilty plea: "[b]ecause of the great weight we place on [plea colloquy] statements, we credit them over [the defendant's] later claims.").

Polanco evidently believes the court should disregard his sworn testimony as the product of his attorney's coercion. Polanco's account of his attorney's communications does not describe coercion, however; to the contrary, Polanco's attorney was required to warn him about the consequences of refusing to withdraw his statement that he had not paid for the gasoline, including the possibility that the attorney would be required to withdraw. *See* ILL. S. CT. R. OF PROF'L CONDUCT 3.3 (an attorney may not assist in perjury).

It was also reasonable for the lawyer to warn Polanco that he would not get credit for acceptance of responsibility unless he told the whole truth. Polanco's attorney's statement that an acceptance of responsibility credit "depended on" Polanco's telling the truth (*see* Sentencing Tr. 260:11–261:2) is accurate, and that statement does not constitute a promise that Polanco

would certainly receive such a credit.  Nor does the court agree that counsel improperly coerced Polanco with his alleged statement that God could not help Polanco.  Such a statement expresses the appropriate level of gravity, given the circumstances Polanco was facing, and it is not fairly characterized as a boast that counsel had "more power than God."  If Polanco's allegations about these statements are true, they do not amount to coercion, and do not otherwise present any reason for the court to disregard the sworn testimony at Polanco's amended change of plea hearing.

The court is unwilling to disregard that testimony for other reasons as well.  Had Polanco believed he was being coerced, he had the opportunity to say so at the amended change of plea hearing.  And as Polanco could observe, his attorney relied on the truthfulness of the amended plea declaration to argue that Polanco had accepted responsibility; Polanco cannot now disavow those statements and try a new sentencing strategy after that first strategy failed.

In subsequent filings, Polanco adds more arguments about his attorney's alleged coercion, but they require little analysis.  Polanco believes that his confinement, his learning disability, and his separation from family made him more susceptible to the lawyer's "coercion" (Polanco Reply at 5), but those stressful circumstances do not render his attorney's statements coercive.  Nor does his claim that his attorney promised him his conditions would improve if he pleaded guilty (a claim that in any event is unsupported by the portion of the sentencing transcript that he cites.  (*Id.* (citing Sentencing Tr. 262:19–20).)  Polanco notes how egregious it would be for a prosecutor to ask a witness to lie under oath (*id.* at 8), but this misses the point: it is improper for any attorney to counsel a witness to lie, but there is no evidence that occurred.  The court should credit his current version of events, Polanco urges, because by admitting he lied, he is subjecting himself to a possible perjury prosecution (*id.* at 6); but that possibility did not stop Polanco from making an untrue statement in the first place.  Allowing the threat of a perjury prosecution to justify disregarding earlier testimony would nullify the compelling reason requirement.  Finally, the absence of an affidavit from defense counsel (*id.* at 2), does not

overcome Polanco's heavy burden, as the court has essentially credited Polanco's account of his communications with counsel, and that account does not justify disregarding his sworn statements in his guilty plea.

### B. Allegations Regarding Ineffective Assistance at Sentencing

#### 1. Alleged Deficiencies in Representation

Polanco argues that his attorney's performance at sentencing was deficient in numerous ways. First, Polanco claims that his attorney did not investigate or present mitigating information. A lawyer is obligated to present such evidence, but "is not required to investigate the defendant's past with the thoroughness of a biographer." *Stewart v. Gramley*, 74 F.3d 132, 135 (7th Cir. 1996). Polanco identifies two types of mitigation that he believes his attorney should have presented: his learning disability, and his family's support.

Polanco's learning disability was mentioned in the PSR, but his attorney referenced it at sentencing only obliquely, urging that Polanco was manipulated by Gonzalez and that he was "confused" and "dumb." Polanco apparently believes that his attorney should have gone further and investigated his school records, which allegedly would have described his disability in greater detail. But not doing so cannot be characterized as deficient. The court was aware of the disability, but was also aware that Polanco graduated from high school in 2002. (Polanco PSR 25.) Whatever difficulties Polanco may have had in school, it was reasonable for counsel instead to focus on more recent circumstances: that Polanco was manipulated by Gonzalez. There is no evidence that Polanco's learning disability diminished his culpability or his ability to understand right from wrong.

Polanco also complains that his attorney did not present evidence from his family in mitigation, did not interview family members, and painted him as "unlovable." (Polanco Reply at 12.) But Polanco's attorney did not say that Polanco was "unlovable." Instead, counsel pointed out that no one spoke up for Polanco at sentencing, and used this to strengthen his argument that Polanco was vulnerable to manipulation by Gonzalez. Polanco attaches letters from his

14

family to his declaration claiming that Polanco's attorney did not ask them to participate in the sentencing hearing (Ex. to Polanco Decl., *United States v. Polanco*, No. 13-CV-6098 (N.D. Ill. Nov. 8, 2013) [12]), but even if these unsworn statements are true, they are not a sufficient reason to question the strategy of presenting Polanco as lacking a significant support network and therefore being vulnerable to Gonzalez's manipulation—a strategy that Polanco himself endorses.  (*See* Polanco Reply at 11.)  Indeed, Polanco suggests that his attorney did not appropriately emphasize Gonzalez's greater culpability, but this argument is defeated by the record.  The sentencing transcript shows that counsel's main argument was that Gonzalez manipulated Polanco.  The court credited that argument and sentenced him accordingly.

Next, Polanco asserts that his lawyer should have argued that the extreme conduct enhancement was less applicable to him, but the factors that warranted this enhancement applied equally to both Defendants: waiting until the lights in the apartment building were all dark, the use of gasoline, and proceeding with arson on the apartment even after torching the car.  (*See* Sentencing Tr. 303:18–304:5.)  Similarly, Polanco believes that departures based on the victims' physical and psychological injuries were less applicable to him (Polanco Reply at 15), but these factors turn on what happened to the victims, not on the specific role played by Polanco.  That diminished role did not mitigate the victims' suffering in any way, a fact Polanco loses sight of throughout his submissions.  Defense counsel did argue that Polanco was less culpable than Gonzalez generally; that he did not break this argument down along specific enhancement lines is not objectively unreasonable.

Polanco's remaining ineffective assistance arguments bear only brief discussion.  He asserts that his counsel did not present a sentencing memorandum.  (*Id.* at 9, 13.)  This is incorrect; defense counsel filed objections to the PSR, but agreed with certain recommendations in the PSR deemed too lenient by the government.  (Polanco's Objections to Presentencing Investigation Report, *United States v. Gonzalez*, No. 09-CR-637 (N.D. Ill. Sept. 1, 2010) [76].)  Polanco complains that his lawyer "sat languorously" throughout

sentencing (Polanco Reply at 13), but the transcript reveals that counsel in fact made reasonable arguments on Polanco's behalf. Polanco believes his lawyer should have argued for a sentence reduction based on "conditions of confinement" (Polanco Decl. at 8), but does not elaborate; and the court would not have been moved by such an argument. Polanco's assertion that his lawyer did not visit him in jail (Polanco § 2255 Mot. at 3; Polanco Reply at 13) is contradicted by his own account of his lawyer's meetings with him at the MCC. (Polanco Decl. at 5.) Polanco has also submitted (and waived privilege with respect to) a letter from his appellate counsel discussing the possibility of making an ineffective assistance argument on direct appeal. (Polanco Reply at Appx. 5, *United States v. Polanco*, No. 13-CV-6098 (N.D. Ill. Jan. 14, 2014) [16].) Notably, Polanco and his lawyer chose not to make this argument, presumably because, as his appellate lawyer herself told him, the case would be "a difficult one." (*Id.*) Appellate counsel's letter does not satisfy the court that trial counsel's performance was objectively unreasonable.

Finally, in a reply brief, Polanco raises additional arguments, namely, that his lawyer should have argued (1) that the guidelines are not binding (Polanco Reply at 14), (2) that "Polanco's actual conduct fit within the context of Aiding and Abetting[,]" and that he did not know the children were in the apartment (*id.*), (3) that the extreme conduct enhancement should not be applied (*id.* at 15), (4) that Polanco should have gotten the minimal participant enhancement (*id.* at 14), and that (5) the children's injuries were not permanent.[3] (*Id.*) The court was well aware that the sentencing guidelines are not binding and has already addressed Polanco's guidelines challenges. His remaining arguments are attempts to relitigate facts addressed at sentencing. For example, the court heard and addressed arguments about the Defendants' knowledge that children were in the apartment. (*Cf.* Sentencing Tr. 283:7–25.)

---

[3] This relies on the purported report of Dr. Brones, which, as the court noted above, is not in the record. Nor would the possibility that the victims could hope for some recovery have been significant to the court in assessing their injuries.

And in light of the extensive and compelling evidence about the severity of the children's injuries, it was reasonable for counsel not to minimize them as Polanco does now; such an argument would have conflicted with Polanco's claim that he had accepted responsibility.

### 2. No Prejudice

For the reasons already explained, the court rejects Polanco's challenges to his attorney's performance. But even if the court found his attorney's performance troublesome, it would dismiss this claim because Polanco cannot establish prejudice. As noted, Polanco was prejudiced only if there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Spiller*, 855 F.3d at 755. The prejudice prong is not satisfied where there was merely "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. In this case, there was none at all. The Seventh Circuit explained that Polanco's sentence "could legitimately have been so much higher." *Polanco*, 496 F. App'x at 645. As appellate counsel accurately predicted in her letter, "the nature of the offense and the injuries suffered [would] overshadow" any arguments about the effectiveness of sentencing counsel. (Polanco Reply at Appx 5, *United States v. Polanco*, No. 13-CV-6098 (N.D. Ill. Jan. 14, 2014).) Considering the gravity of this case, that Polanco could easily have received a higher sentence, and that Polanco lied at his original change of plea hearing, there is no evidence that his attorney's strategic decisions deprived Polanco of a fair proceeding. A hearing is unnecessary to resolve these claims—even if Polanco's allegations about his attorney's actions were true, they do not constitute ineffective assistance. Polanco's motion to vacate or reduce his sentence is denied.

## II. Motion to Compel Discovery

Polanco has also asked for discovery. Specifically, he requests access to (1) e-mails between his trial counsel and prosecutors, (2) recordings and transcripts of discussions between Polanco and trial counsel at the jail where he was held before trial, (3) the recording of the conversation between Polanco and Gonzalez in the squad car after they were arrested, (4)

"a transcript or synopsis of the debriefing attempt made by [the prosecutor], and other agents, made without Polanco's benefit of counsel," and (5) all notes and reports by investigators. (Mot. to Compel Discovery and Stay the Case at 1, *United States v. Polanco*, No. 13-CV-6098 (N.D. Ill. Oct. 3, 2013) [3] ("Polanco Mot to Compel").) Polanco later added an additional request for "all information proffered by . . . Trinidad." (Polanco Reply at 2.)

A petitioner under § 2255 is entitled to discovery if he can "(1) make a colorable claim showing that the underlying facts, if proven, constitute a constitutional violation; and (2) show 'good cause' for the discovery." *Hubanks v. Frank*, 392 F.3d 926, 933 (7th Cir. 2004) (internal citation omitted). "Good cause, however, cannot exist where the facts alleged do not provide a basis for relief." *Id.* Polanco appears to believe that the materials he is requesting would establish that he protested remaining on the scene after the car fire; that he was "comp[elled]" to remain because Gonzalez taunted him; and that Gonzalez only started the apartment fire to enable Fermaintt to recover insurance proceeds. (*See* Polanco Reply at 7–8, 14; *cf.* Polanco Reply at 3 (claiming that Polanco cannot establish that he is entitled to relief without these materials).) But none of these circumstances are inconsistent with Polanoco's lawyer's argument that he was manipulated by Gonzalez, or with Polanco's own testimony that he *did* know what Gonzalez intended. In short, Polanco has not explained how information in the materials he seeks now could support any meritorious claims for relief. The court declines to order discovery. Polanco also seeks a copy of the transcript from his amended change of plea hearing. (Polanco Mot. to Compel at 1.) A defendant is entitled to the files and records from his conviction, including transcripts. *Cf. Rush v. United States*, 559 F.2d 455, 456–59 (7th Cir. 1977). The court will direct the Clerk to furnish Polanco with a copy of the seventeen-page transcript.

### III. Gonzalez's First § 2255 Motion

Gonzalez has also filed a motion to reduce or vacate her sentence, on four grounds: (1) ineffective assistance of counsel, because "counsel failing to argue that, based on his personal

knowledge, I have indeed exhibited 'extraordinary acceptance of responsibility['] and 'double counting' of base offense level under 2K1.4(a)(1)(4) being counted again under 5K2.2," (2) the "court failed to articulate the 3553(a) factors that determined its chosen sentence adding one level for uncharged car fire and two levels for psychological injury," (3) the "denial of adjustments for acceptance of responsibility," and (4) the "court failed to address 3553(a) factors thus hindering appellate review." (Gonzalez Mot. to Vacate, Set Aside, or Correct a Sentence at 4, *United States v. Gonzalez*, No. 13-CV-7018 (N.D. Ill. Sept. 30, 2013) [1].) None of these support relief.

### A.      No Ineffective Assistance  / No Prejudice

Gonzalez's arguments about ineffective assistance of counsel fail because she has not demonstrated that her attorney's arguments fell below objectively reasonable standards. Her suggestion that her attorney did not adequately advocate for an acceptance-of-responsibility credit is belied by her attorney's lengthy argument at sentencing on this very issue. It is unclear what more Gonzalez believes he could have done. She also appears to believe that her attorney should have argued that application of some of the enhancements or departure criteria was "double-counting."[4]  "[D]ouble counting is generally permissible unless the text of the guidelines expressly prohibits it." *United States v. Vizcarra*, 668 F.3d 516, 519 (7th Cir. 2012). None of the relevant guidelines expressly prohibit using the same facts to support both an element of the offense and an enhancement, so her attorney was not deficient for failing to make this frivolous argument. In a similar vein, Gonzalez complains that her attorney did not cross-examine Trinidad. (Def.'s Resp. to Government's Resp. at 5, *United States v. Gonzalez*, No. 13-CV-7018 (N.D. Ill. Apr. 10, 2014) [12] ("Gonzalez Reply").) Gonzalez complains that Trinidad's statements were false, but does not say what Trinidad would have said on cross

---

[4]      Gonzalez refers to a guideline that does not exist, guideline § 2K1.4(a)(1)(4), but the court assumes that she is referring to the arson base level offense guideline, § 2K1.4(a)(1).

examination, or how it would have helped Gonzalez. Regardless, at her change of plea hearing, Gonzalez acknowledged that she waived her right to cross-examine witnesses. (Gonzalez Change of Plea Tr. 7:21–8:4.) This is no basis for deficient performance.

In her reply, Gonzalez adds a complaint that her attorney was ineffective for failing to hire an "arson specialist." (Gonzalez Reply 5.) Gonzalez does not explain what an arson specialist could have done,[5] but it appears that she believes that a specialist could show that Trinidad, not Gonzalez, lit the match. But at sentencing, counsel noted the dispute between the government's and Gonzalez's version of the facts, and argued that Gonzalez was entitled to acceptance of responsibility because she did not want to subject the victims to a trial to resolve the issue. (Sentencing Tr. 247:15–248:25.) Thus, the decision not to pursue this question of who lit the match was a strategic decision, and was not unreasonable.

Even if any of these choices were objectively unreasonable, as with Polanco, they did not prejudice Gonzalez. The evidence overwhelmingly pointed to Gonzalez as the central figure in the arson (Gonzalez's attempts to attack that evidence are addressed below). Because her sentence could, in the words of the Seventh Circuit, "legitimately have been so much higher[,]" *Polanco*, 496 F. App'x at 645, there is not genuine possibility that any of these minor changes to her attorney's arguments would have resulted in a different sentence. She was not prejudiced by her attorney's performance. A mere possibility is not enough to meet the prejudice prong for ineffective assistance of counsel.

## B. Section 3553(a) Claims

Gonzalez's second and fourth grounds for relief are sentencing challenges: she contends the court misapplied § 3553(a) factors. This issue was presented on direct appeal,

---

[5]     Had an expert been called, the court is uncertain how much value his/her testimony may have had. *Cf. generally* Mark Hansen, *Long-Held Beliefs About Arson Science Have Been Debunked After Decades of Misuse*, ABA JOURNAL (Dec. 1, 2015), http://www.abajournal.com/magazine/article/long_held_beliefs_about_arson_science_have_been_debunked_after_decades_of_m.

however, and is therefore not properly before this court. "[I]n the absence of changed circumstances of fact or law, [a court] will not reconsider an issue which was already decided on direct appeal." *Olmstead v. United States*, 55 F.3d 316, 319 (7th Cir. 1995); *see Withrow v. Williams*, 507 U.S. 680, 721 (1993) (Scalia, J., concurring). Gonzalez offers what she says are changed circumstances: she claims that Trinidad was not truthful in her statements to the government, and that Polanco was responsible for more conduct than he initially claimed: participating in the car fire and disposing of the evidence. (Gonzalez Reply 4–5.)

These are not changed circumstances. Gonzalez's disputes concerning Trinidad's statements about her role in the offense were discussed at sentencing, and Gonzalez's attorney incorporated this dispute into his argument for acceptance of responsibility. Further, even if Gonzalez's claims about Trinidad's statements are true, neither those statements nor Polanco's participation diminish Gonzalez's own role in the offense. These would not cause a court to revisit its decision on direct appeal that the court appropriately discussed § 3553(a).

### C.    Issues That Could Have Been Raised on Direct Appeal

Gonzalez's remaining arguments concern issues that she could have raised on direct appeal, but did not. First, she argues that she should have received an adjustment for acceptance of responsibility. In her reply brief, she adds a litany of additional complaints about her sentence that also could have been raised on direct appeal: (1) that the evidence did not show that she intentionally or knowingly caused injury (*see* Gonzalez Reply 2), (2) that the court improperly enhanced her sentence based on characteristics of the crime that are "intrinsic to the crime of arson" (*id.* at 3), (3) that the witnesses at sentencing were not credible, and the enhancements were determined by speculation (*id.*), (4) that she was less culpable than others in the crime and that Polanco, not Gonzalez, was the leader/organizer (*id.* at 6), (5) that she did

not send threatening text messages to Fermaintt[6] (*id.*), and (7) that the application of the enhancements was improper double-counting.[7] (*Id.*) She also reminds the court that Fermaintt sent threats to Gonzalez (*id.* at 5), a fact that the court addressed at sentencing. Gonzalez also suggests that facts that increased her mandatory minimum sentence were not proved beyond a reasonable doubt (*see id.* at 3)—an argument defeated by her guilty plea and by the fact that she acknowledged application of the arson mandatory minimum at her change of plea hearing. (Gonzalez Change of Plea Tr. 11:17–24, 13:7–14:9.) She also complains that Trinidad was never charged in relation to the fire (*see* Gonzalez Reply 5), though this has no bearing on Gonzalez's own culpability.

The court need not address the merits of any of these issues, however: claims that are not raised on direct appeal are procedurally defaulted, and can be raised in § 2255 proceeding only if the petitioner has cause for the default and prejudice from the failure to appeal. *See Torzala*, 545 F.3d at 522; *Barker v. United States*, 7 F.3d 629, 632 (7th Cir. 1993).[8] Gonzalez does not address either cause or prejudice; she offers no explanation for her failure to raise this issue on direct appeal. Even if she had, the court is particularly skeptical that she was prejudiced by her failure to appeal these issues: the Court of Appeals explained that Gonzalez's sentence could have been much higher, making it highly unlikely that these minor issues could have made a difference to her sentence. Her suggestion that Fermaintt's threats somehow justify her own behavior is not worthy of comment. Consequently, Gonzalez's § 2255 motion is

---

[6]     The court attributed this text message to Gonzalez in its ruling that the attempted-murder cross reference did *not* apply, as evidence that Gonzalez did not intend to hurt the children and only meant to scare Fermaintt. (*See* Sentencing Tr. 216:19–217:3.) The court's attribution of the text message to Gonzalez resulted in Gonzalez receiving a *lower* base offense level guideline.

[7]     The substance of this argument is addressed above.

[8]     Gonzalez does not assert that she is actually innocent, so the court need not consider whether that allows her to overcome her procedural default. *Cf. Torzala,* 545 F.3d at 522.

denied. The court also resolves this matter without a hearing—Gonzalez's ineffective assistance of counsel claims involve reasonable strategic decisions that are not grounds for relief, and her remaining claims fail on procedural grounds.

## IV.  Certificate of Appealability

An appeal from the denial of a motion under § 2255 requires a certificate of appealability. 28 U.S.C. § 2253(c). To be entitled to a certificate requires "a *constitutional* claim (or an underlying procedural argument on which a constitutional claim depends)[.]" *United States v. Fleming*, 676 F.3d 621, 625 (7th Cir. 2012) (emphasis in original). The petitioner must "demonstrate that reasonable jurists would find the district court's assessment of his constitutional claims debatable or wrong." *Id.* (quoting *Tennard v. Dretke*, 542 U.S. 274, 281, (2004)). The court doubts that reasonable jurists would disagree about its ruling on Polanco's or Gonzalez's motions; the Court of Appeals itself has already noted that both defendants could legitimately have been awarded higher sentences without raising constitutional concerns. Apart from Polanco's self-serving statements about coercion, which he has made only after the court declined to award him a credit for acceptance of responsibility, neither has raised any arguments or facts not considered by the court at sentencing. The court denies a certificate of appealability for either motion.

## V.  Gonzalez's Second § 2255 Motion

While her first motion was pending, Gonzalez filed a request for a second § 2255 pro se motion. She requests relief:

> [B]ased on the decision by the Supreme Court on April 18, 2016 in Welch v. United States (No. 15-6418) holding that its Johnson v. United States, 135 S. Ct. 2551 (2015) decision is retroactively applicable on collateral review. This will allow defendants with an Armed Career Criminal ("ACCA") sentence, those classified as Career Offenders, and those with 924(c) firearm enhancements, to challenge their sentencing.

(Request for Permission to File a Successive § 2255 Mot., *United States v. Gonzalez*, No. 16-CV-6499 (N.D. Ill. June 20, 2016) [1].) The argument is mystifying: Gonzalez was not

sentenced as an Armed Career Criminal, nor was she deemed a career offender. The court nevertheless appointed an attorney to represent Gonzalez. (Order, *United States v. Gonzalez*, No. 16-CV-6499 (N.D. Ill. July 6, 2016) [3].) Appointed counsel filed a supplemental memorandum confirming that he had nothing to add in support of the request for a successive motion. (Gonzalez's Supplemental Memorandum, *United States v. Gonzalez*, No. 16-CV-6499 (N.D. Ill. Nov. 14, 2016) [12].)[9]

A defendant may not file a second or successive unless he or she first seeks permission from the Court of Appeals. 28 U.S.C. § 2255(h). Gonzalez has not done so, and accordingly the court must dismiss Gonzalez's second motion for lack of jurisdiction. *See Nunez v. United States*, 96 F.3d 990, 991 (7th Cir. 1996).

## CONCLUSION

Polanco's § 2255 motion (No. 13-CV-6098 [1]) and motion to compel discovery (No. 13-CV-6098 [3]) are denied. The Clerk of the Court is directed to furnish Polanco with a copy of the transcript from his amended change of plea hearing (No. 09CR637-2 [116].) Polanco's motion to clarify (No. 13-CV-6098 [11]) is stricken as a duplicate of docket entry (No. 13-CV-6098 [8]), which the court previously ruled upon, and his requests for status on his motions, docketed as motions, (No. 13-CV-6098 [19, 21]) are stricken as moot. Gonzalez's first § 2255 motion (No. 13-CV-7018 [1]) is denied, and her second § 2255 motion (No. 16-CV-6499 [1]) is dismissed for lack of jurisdiction. The court declines to issue certificates of appealability

ENTER:

Dated: August 30, 2017

_____
REBECCA R. PALLMEYER
United States District Judge

---

[9] Gonzalez also submitted a letter to the court, inquiring about a docket entry that was entered erroneously. (Letter, *United States v. Gonzalez*, No. 16-CV-6499 (N.D. Ill. Oct. 3, 2016) [6]; *see* Notice of Correction, *United States v. Gonzalez*, No. 16-CV-6499 (N.D. Ill. Aug. 22, 2016) [5].) That entry has been removed.